KENNETH M. WEINFIELD (SBN 116560)
**CHAUVEL & GLATT, LLP**
66 BOVET ROAD, SUITE 280
SAN MATEO, CA  94402
TELEPHONE:  650-573-9500
FACSIMILE: 650-573-9689
EMAIL:  ken@chauvellaw.com

Attorneys for Plaintiff The Logistics Guys Inc.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LOGISTICS GUYS INC., an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>DOMINICK CUEVAS, an individual, and TRIBAL LOGISTICS INC., a Texas Corporation, IMPALA FREIGHT INC., a California corporation, ADAM NESTA, an individual,<br><br>Defendants. | Case No. 2:23-CV-01592-DAD-CSK<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF IN SUPPORT OF PLAINTIFF THE LOGISTICS GUYS INC.'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>**DATE:**  May 21, 2024<br>**TIME:**   1:30 p.m.<br>**COURTROOM:** 4, 15th Floor<br>**JUDGE:**  Hon. Dale A. Drozd |

# TABLE OF CONTENTS

**Page(s)**

INTRODUCTION ……………………………………………. 1

FACTUAL BACKGROUND ………………………………………… 1

DISCUSSION ………………………………………………… 5

    I.    DEFENDANTS" MISCONDUCT SHOULD BE ENJOINED …………………………………………… 5

        A. Plaintiff is Likely to Succeed on the Merits of its Claims ………………………………………… 5

            1. Defendants Have Misappropriated TLG Trade Secrets. 5

            2. Nesta Breached His Duty to Loyalty to TLG …………. 8

            3. Adverse Inferences Should be Drawn From Cuevas and Nesta's Acts of Spoliation ………………………… 9

        B. TLG is Threatened With Irreparable Harm ………………… 10

        C. The Balance of Equities and Public Interest Tip Decidedly in TLG's Favor …………………………. 11

CONCLUSION …………………………………………………….. 11

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ABBA Rubber Co. v. Seaquist*
    235 Cal.App.3d 1, 20 (1991) ……………………………………… 6

*Brocade Comm'n Sys. Inc. v. A10 Networks, Inc.*
    873 FSupp.2d 1192, 1214 (N.D. Cal 2012) ………………………….. 6

*Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*
    265 F.R.D. 510, 533 (E.D. Cal. 2010) ……………………………….. 9

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*
    444 F.Supp.3d 1198, 1205 (E.D. Cal. 2020) ………………………… 6, 7, 8, 10, 11

*Fowler v. Varian Associates, Inc.*
    196 Cal.App.3d 34, 41 (1987) ……………………………………….. 8

*Glover v. BIC Corp.*
    6 F.3d 1318, 1329 (9th Cir. 1993) ………………………………….. 9, 10

*Huong Que, Inc. v. Luu*
    150 Cal. App. 4th 400, 414 (2007) …………………………………. 8, 11

*Kettler Int'l, Inc. v. Starbucks Corp.*
    81 F.Supp.3d 495, 500 (E.D. Va. 2015) …………………………….. 9

*MAI Sys. Corp. v. Peak Comput., Inc.*
    991 F.2d 511, 521 (9th Cir. 1993) ………………………………….. 6

*Matthew Enter. V. Chrysler Corp., LLC*
    2016 U.S. Dist. LEXIS 67561 *6 (N.D. Cal. 2016) ………………… 10

*Med Lab. Mgmt. Consultants v. Am. Broad. Cos*.
    306 F.3d 806, 824 (9th Cir. 2002) ………………………………….. 9

*Merrill Lynch Pierce, Fenner & Smith Inc. v. Perez*
    2000 U.S. Dist. LEXIS 22958 (E.D. Cal. 2000) at *20-21………… 10, 11

*Southwest Voter Registration Education Project v. Shelley*
    344 F.3d 914, 917 (9th Cir. 2003) ………………………………….. 5, 10

*Stokes v. Dole Nut Co.*
    41 Cal. App. 4th 285, 295 (1995) …………………………………… 8

*Stuhlbarg International Sales Co. v. John D. Brush & Co.*
    240 F.3d 832, 839-40 (9th Cir. 2001) …………………………….  5

*U-Haul International Inc. v. Jartran Inc.*
    522 F.Supp. 1238, 1255 (D. Ariz. 1981),
      *aff'd* 681 F.2d 1159 (9th Cir. 1982) …………………………….  11


**STATUTES AND RULES OF COURT**

Cal. Civ. Code § 3426.1 *et. seq.* ……………………………………… 6

Cal. Civ. Code § 3426.l(d) …………………………………………… 6

Civ. Code § 3426.l(b)(2)(B)(iii) …………………………………….. 6, 8

Cal. Labor Code § 2863 ……………………………………………. 8

Fed. R. Civ. Proc. 37(e) ……………………………………………… 10

18 U.S.C. § 1836(b)(1) ……………………………………………… 6

18 U.S.C. § 1839(3) ………………………………………………… 6

18 U.S.C. § 1839(3), (5)(B) ………………………………………… 6

18 U.S.C. §1839(5)(B)(ii)(III) …………………………………….. 6, 8

## INTRODUCTION

Plaintiff The Logistics Guys Inc. ("TLG") seeks a preliminary injunction against two former employees and a company with which they conspired to misappropriate TLG trade secrets and customers. An initial wave of discovery has revealed, moreover, that the two individual defendants systematically deleted or destroyed highly pertinent evidence in an effort to cover their tracks, while creating hardship for TLG's operations. Forensic analysis of a company computer utilized by one of them has supplied irrefutable proof of their misconduct.

Yet even after being confronted with this evidence, defendants – through their counsel – have refused to acknowledge their misdeeds or to substantively discuss a resolution of the issues underlying this motion. Instead, they have threatened to disparage TLG within the industry and further disseminate company information. It thus became necessary to seek preliminary injunctive relief to halt defendants' continuing tortious acts.

## FACTUAL BACKGROUND

Defendant Dominick Cuevas ("Cuevas") worked for TLG from 2019 until he was suspended from that position on June 13, 2023 and then terminated on July 5, 2023. Declaration of Elijah Rodriguez in Support of Plaintiff The Logistics Guys Inc.'s Motion for Preliminary Injunction ("Rodriguez Decl.") ¶ 2. Defendant Adam Nesta ("Nesta") worked for TLG from December 2021 until he abruptly resigned on August 18, 2023. Both signed employment agreements with the company which required them to maintain the confidentiality of TLG information. Rodriguez Decl. ¶¶ 2-3, Exhs. A and B.

Through their work at TLG, Cuevas and Nesta became acquainted with proprietary trade secret information concerning the company's business, including customer identities and needs, key customer decision makers, contact information and strategies, as well as processes and equipment utilized by

TLG to meet its customers' needs. Rodriguez Decl. ¶ 4. Cuevas and Nesta also learned the identities of carriers utilized by TLG to transport its customers' shipments, as well as the carriers' key decision-makers and pertinent contact information. *Id.*

During the last two days of his employment with TLG, Nesta utilized a personal thumb drive to download multiple TLG sales reports from the company's cloud computer system. Declaration of Jon Berryhill in Support of Plaintiff's Motion for Preliminary Injunction ("Berryhill Decl.") ¶ 7, Exh. A; Rodriguez Decl. ¶¶ 6-7. Nesta had no need to utilize a thumb drive in his work at TLG since company documents were readily available to him on the company's cloud computing system. Rodriguez Decl. ¶ 7. Those reports included TLG customer and carrier data as well as company revenue, cost and profit information, all of which would be extremely useful in competing against TLG. *Id.*

A few days earlier, Nesta downloaded TLG's carrier database from an affiliate's website to an Excel spreadsheet, apparently for the purpose of using it to assist defendant Impala Freight Inc. and Cuevas in their efforts to usurp TLG customers. Berryhill Decl. ¶ 8, Exh. B; Rodriguez Decl. ¶ 8. That same day, Nesta deleted over 900 documents from TLG's cloud system, including from a folder labelled "Dominick Cuevas." Berryhill Decl. ¶ 9, Exh. C; Rodriguez Decl. ¶ 8. And in the hours leading up to his resignation, Nesta used his company computer to access numerous other company files, including vendor and carrier lists, customer quote requests, training and accounting information, bills of lading, broker agreements corporate and financial documents, licenses, insurance information and new hire documents. Berryhill Decl. ¶ 10, Exh. D; Rodriguez Decl. ¶ 9.[1]

---

[1] In his recent discovery responses, Nesta denied having retained any TLG documents following his employment with the company. Declaration of Kenneth M. Weinfield in Support of Plaintiff's Motion for Preliminary Injunction ("Weinfield Decl.") ¶ 4, Exh. E (response to Interrogatory No. 8). His counsel has repeatedly indicated that an amended interrogatory response would be provided, but none have been forthcoming to date. *Id*. ¶ 4.

After the instant lawsuit was filed, Cuevas and Nesta destroyed evidence on their personal phones which would have shown the extent to which Nesta shared this purloined information with Cuevas during this timeframe. Three days before Cuevas was due to produce documents in response to a discovery request, he took his iPhone in for "repairs" knowing that the repair work could erase all of the data on the phone. Weinfield Decl. Exhs. F and G. Nesta physically destroyed his phone shortly after his resignation from TLG, and now claims that he did so to comply with TLG's request that he delete all company data on his personal devices. *Id.* Exh. E (response to Interrogatory No. 7). However, his discovery responses indicate that this destruction occurred two days *before* TLG's request to delete that data was conveyed to him. *Id.*; Rodriguez Decl. ¶ 11.

That this destruction of evidence was no accident or coincidence is shown by the fact that two additional members of Cuevas' team (one of whom is Nesta's wife) also destroyed potentially discoverable evidence following their respective departures from the company. Rodriguez Decl. ¶ 10; Berryhill Decl. ¶ 11, Exh. E. Nor is it any coincidence that Nesta went to work for Impala one business day after his above-described deletion of TLG files. Rodriguez Decl. ¶ 9. Defendants' discovery responses acknowledge that at least 18 TLG customers have transferred their business to Impala. Id. ¶ 16.[2]

TLG's above-referenced trade secret information is not generally known to the public, or to those who can derive economic value from its use. The company has taken reasonable steps to maintain the confidentiality of this information; these measures include requiring its employees to enter into

---

[2] One other member of Cuevas' team at TLG, Carol Rollins, also erased the entire hard drive from her company computer following her departure from the company. Rodriguez Decl. ¶ 10. Since neither Ms. Nesta nor Ms. Rollins are spiteful in nature or sophisticated computer users, they are unlikely to have effected such erasures absent the instigation of Cuevas, who himself destroyed potential evidence on his company computer shortly after the conclusion of his TLG employment. Rodriguez Decl. ¶ 10.

3
MPA ISO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

confidentiality agreements prohibiting the unauthorized use or disclosure of such trade secrets. Rodriguez Decl. ¶ 5. It also utilizes a secure cloud network system to protect its electronic files. This information, generated over many years in business, provides TLG a considerable economic advantage in the marketplace. Rodriguez Decl. ¶ 13.

TLG provides logistics, transportation, installation and related services nationwide. It frequently works as an affiliate or agent of Transmedik Specialized, which provides a platform for agents such as TLG to broker shipments on behalf of its customers. Rodriguez Decl. ¶ 12. TLG also handles shipments apart from Transmedik. In both scenarios, customers procured by TLG belong to it, along with relevant information generated during the course of those dealings. *Id.* Similar arrangements are widely utilized within the transportation industry. *Id.* For some customers, TLG manages only their last-minute logistical needs; for others, TLG handles full projects that require weeks or months of coordination and preparation; for others, TLG manages all of their logistical needs. Many of TLG's customers operate in the agriculture, construction, fitness, retail and corporate fleet management sectors, ranging from manufacturers and distributors to resellers and installers. *Id.*

The transportation, logistics, warehousing, installation and supply chain management industries are highly dependent upon customer and carrier relationships established over an extended period of time. Such relationships are the lifeblood of TLG's business. Rodriguez Decl. ¶ 13. TLG has identified its customers and carriers through painstaking, trial-and-error efforts over the course of almost two decades. This has involved extensive market research, vetting processes, following up on referrals, process development, data collection and organization. *Id.* The information generated by these efforts includes each customer's and carrier's particular needs as well as their key decision-makers and contact information. Without knowing who to call at which companies (and how to reach them), it would take a competitor years or decades to re-create this information. *Id.* Instead, defendants opted

to target their former employer's customers, using TLG's own trade secrets against it. Approximately 38 % of its customer base has already been usurped by them. Rodriguez Decl. ¶ 13.

Defendants' misuse of TLG information represents an existential threat to the company. Rodriguez Decl. ¶ 17. They have not only usurped large numbers of TLG customers, but are poised to misappropriate more. *Id*. It would, moreover, be difficult to quantify the full extent of the harm to its operations from defendants' actions in dollar terms. *Id*. TLG made a strenuous effort to resolve these issues with defendants prior to bringing this motion, but was met with a barrage of insults, threats and bizarre drawings on defense counsel's meet-and-confer letters. Weinfield Decl. ¶ 2, Exhs. A-C. On April 3, 2024, the latter refused to discuss a resolution of the issues raised herein. *Id.* ¶ 3, Exh. D.

## DISCUSSION

### I. DEFENDANTS' MISCONDUCT SHOULD BE ENJOINED

To obtain a temporary restraining order or preliminary injunction, an applicant must demonstrate a likelihood of success on the merits along with a significant threat of irreparable injury, and that the balance of hardships tips in its favor. *Southwest Voter Registration Education Project v. Shelley,* 344 F.3d 914, 917 (9th Cir. 2003). Alternatively, it may show either a combination of probable success on the merits and the possibility of irreparable injury, or that serious questions are raised and that the balance of hardships tilts sharply in its favor. *Stuhlbarg International Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839-40 (9th Cir. 2001); *Southwest Voter Registration*, 344 F.3d at 917. As set forth below, TLG has satisfied each of these tests.

**A. Plaintiff is Likely to Succeed on the Merits of its Claims**

**1. Defendants Have Misappropriated TLG Trade Secrets**

The Defend Trade Secrets Act ("DTSA") established a federal cause of action for the misappropriation of trade secrets "related to a product or service used in, or intended for use in,

interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). Here, TLG's customer information undergirds its provision of interstate shipping services. Rodriguez Decl. ¶ 12. Those trade secrets are also protectable under the Uniform Trade Secrets Act (UTSA), Cal. Civ. Code § 3426.1 *et. seq*. Because the applicable principles under both federal and state laws are similar, the discussion below relies upon case authority from both. *See Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F.Supp.3d 1198, 1205 (E.D. Cal. 2020).

Both the DTSA and UTSA define trade secrets as information which derives economic value from not being generally known, and is the subject of reasonable efforts to maintain its secrecy. 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.l(d). The confidential customer information at issue here falls squarely within these parameters. Rodriguez Decl. ¶ 5. *See MAI Sys. Corp. v. Peak Comput., Inc.*, 991 F.2d 511, 521 (9th Cir. 1993) (customer information developed over lengthy period of time protectable); *ABBA Rubber Co. v. Seaquist*, 235 Cal.App.3d 1, 20 (1991) (information protected which could not be replicated without extensive effort and expense); *Brocade Comm'n Sys. Inc. v. A10 Networks, Inc.*, 873 FSupp.2d 1192, 1214 (N.D. Cal 2012) (information regarding customer needs and preferences).

Misappropriation of trade secrets occurs through the disclosure or use of a trade secret by a person who knows or has reason to know that their knowledge of the secret was acquired under circumstances giving rise to a duty to maintain its secrecy. 18 U.S.C. § 1839(3), (5)(B); Cal. Civ. Code § 3426.l(b)(2)(B)(ii). An actionable misappropriation may also occur through the use of a trade secret by one who knows or has reason to know that his or her knowledge of the secret was derived from or through a person who owed a duty to the party seeking relief to maintain its secrecy or limit its use. 18 U.S.C. §1839(5)(B)(ii)(III); Cal. Civ. Code § 3426.l(b)(2)(B)(iii).

In this case, defendants have targeted TLG customers by utilizing trade secrets obtained from TLG. Cuevas and Nesta became acquainted with that information during their employment with TLG,

under their respective confidentiality agreements.  Rodriguez Decl. ¶¶ 2-3, Exhs. A and B.  Nesta then downloaded numerous TLG documents to a personal thumb drive in the days leading up to his resignation from TLG.  Berryhill Decl. Exhs. A-D; Rodriguez Decl. ¶¶ 7-9.  That confidential information was of the type which would enable a competitor to identify TLG's customers out of the universe of potential customers for interstate shipping services and solicit their business.  Rodriguez Decl. ¶¶ 13-14.

Nesta also deleted numerous documents from TLG's cloud computing system during that same timeframe, in an apparent effort to sabotage TLG's ability to service those customers going forward.  Berryhill Decl. ¶ 9, Exh. C; Rodriguez Decl. ¶ 8.  These actions forced TLG to reconstruct portions of its customer records from scratch in order to handle shipments while defendants were re-directing that business to themselves, utilizing confidential information obtained from TLG.  Rodriguez Decl. ¶ 11.  By their own admission, defendants have re-directed at least 18 of those customers to Impala.  Rodriguez Decl. ¶ 13.  It would have been impossible for defendants to ascertain these customers' identities, key contacts and particular needs other than by drawing upon trade secret information obtained from TLG.  *Id.* ¶¶ 13, 16.

Forensic analysis has now confirmed that Nesta downloaded a substantial quantity of TLG information to a personal thumb drive immediately prior to his resignation from the company.  Berryhill Decl. Exhs. A-B; Rodriguez Decl. ¶¶ 7-8.  Given defendants' systematic destruction of evidence on their electronic devices, Weinfield Decl. Exhs. E-F, it is reasonable to infer that Cuevas and Nesta brought that customer information with them to Impala and are currently using it.  *Cutera,* 444 F.Supp.3d at 1207 (drawing similar conclusions from ex-employees' misappropriation of electronic documents around the time of their resignation).  Adverse evidentiary inferences should be drawn from these intentional acts of spoliation as described in section 3, *infra*.

Actionable misappropriation occurs not only by personally stealing trade secrets, but by using them with knowledge (or reason to know) that the information was derived from or through a person who owed a duty to the party seeking relief to maintain its secrecy or limit its use. 18 U.S.C. §1839(5)(B)(ii)(III); Cal. Civ. Code § 3426.l(b)(2)(B)(iii). Here, both Impala and Cuevas knew what they were getting from Nesta; hence they are no less culpable than he is for misappropriating TLG trade secrets. *Cutera*, 444 F.Supp.3d at 1209 (transferring company data to an external hard drive "gives rise to a reasonable inference that [the former employees] intended to use this information to benefit their new employer").

### 2. Nesta Breached His Duty of Loyalty to TLG

During his employment with TLG, Nesta was required to provide undivided loyalty to the company. *Fowler v. Varian Associates, Inc.,* 196 Cal.App.3d 34, 41 (1987). Such a duty is violated when the employee behaves in a way which is "inimical to the best interests of the employer." *Huong Que, Inc. v. Luu,* 150 Cal. App. 4th 400, 414 (2007) (quoting *Stokes v. Dole Nut Co.,* 41 Cal. App. 4th 285, 295 (1995)). *See* Cal. Labor Code § 2863.

Nesta's employment agreement with TLG expressly required him to devote his "best efforts to the business of Employer, to perform conscientiously all duties and obligations required or assigned, and to not usurp for personal gain any opportunities in Employer's line of business." Rodriguez Decl. ¶ 3, Exh. B (p. 3). By downloading and deleting TLG information while still employed by TLG, Nesta violated both his statutory and contractual duties to the company. In conspiring with Nesta in these efforts, Cuevas and Impala are also liable for Nesta's breach of his duty of loyalty to TLG. Indeed, Cuevas' recruitment of Nesta to work with him at Impala violated the non-solicitation clause of his employment agreement with TLG. *See* Rodriguez Decl. ¶ 2, Exh. A (p. 6).

### 3. Adverse Inferences Should be Drawn From Cuevas and Nesta's Acts of Spoliation

Nesta began working with Cuevas at Impala one business day after downloading confidential TLG files to a personal thumb drive and destroying information on TLG's cloud computing system, including from Cuevas' former folder. Nesta then physically destroyed his cell phone on his first day of work for Impala, evidently to prevent TLG from gaining access to discoverable information relevant to its then-pending lawsuit against Cuevas. Cuevas himself arranged for data on his cell phone to be deleted by a repair shop three days before information residing thereon was due in response to a discovery request. Other TLG employees on Cuevas' team who left the company around that same time also deleted TLG documents from their company computers before returning those devices to TLG. Berryhill Decl. ¶ 11, Exh. E; Rodriguez Decl. ¶ 10.

If these had been isolated acts, such deletions could perhaps be explained as accidents or inadvertence; taken together, this systematic spoliation of highly pertinent information helps prove the illicit nature of defendants' scheme. Under these circumstances, adverse evidentiary inferences should be drawn against the persons responsible for such destruction. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993); *Med Lab. Mgmt. Consultants v. Am. Broad. Cos.*, 306 F.3d 806, 824 (9th Cir. 2002).

A party's duty to preserve evidence exists, moreover, not just during litigation but also beforehand, when they "reasonably should know that the evidence may be relevant to anticipated litigation." *Kettler Int'l, Inc. v. Starbucks Corp.*, 81 F.Supp.3d 495, 500 (E.D. Va. 2015); *accord, Cont'l Cas. Co. v. St. Paul Surplus Lines Ins. Co.*, 265 F.R.D. 510, 533 (E.D. Cal. 2010).

Here, Cuevas sent his cell phone out for repairs – which he knew could erase the files on it – three days before his response to plaintiff's document requests were due. Indeed, the repair service which Cuevas utilized expressly warns clients to back up their data before bringing in their phones. Weinfield Decl. Exhs. F-G. Nesta physically destroyed his phone, likely at Cuevas' behest, a little over a month after this lawsuit was commenced. *Id.* Exh. E (response to Interrogatory No. 7).

When electronically stored information is lost because a party failed to take reasonable steps to preserve it, the court may infer that the lost information was unfavorable to that party. Fed. R. Civ. Proc. 37(e); *see Matthew Enter. v. Chrysler Corp., LLC*, 2016 U.S. Dist. LEXIS 67561 *6 (N.D. Cal. 2016); *Glover*, 61 F.3d at 1329. Here, it would be appropriate to infer that the data destroyed by Nesta and Cuevas on their phones would have confirmed the transmission of TLG information from the former to the latter, and their joint use of it to usurp TLG customers on Impala's behalf.

TLG has thus demonstrated a substantial likelihood of success on the merits of its claims. *Southwest Voter Registration*, 344 F.3d at 917.

### B. TLG is Threatened With Irreparable Harm

Defendants' use of TLG information to compete against it – coupled with their destruction of electronic data – present an existential threat to TLG's business absent judicial intervention. Rodriguez Decl. ¶¶ 13-14. The loss of customer relationships under these circumstances is, by definition, irreparable. *See Merrill Lynch Pierce, Fenner & Smith Inc. v. Perez,* 2000 U.S. Dist. LEXIS 22958 (E.D. Cal. 2000) at *20-21 (irreparable harm demonstrated through lost goodwill and competitive advantage); *Cutera*, 444 F.Supp.3d at 1209 (use of plaintiff's trade secrets to benefit competitor constitutes irreparable harm).

Here, TLG developed its customer and carrier relationships through painstaking, trial-and-error efforts over the course of almost two decades. This involved extensive market research, vetting processes, following up on referrals, process development, trial and error, data collection and organization. Rodriguez Decl. ¶ 13. The information generated by these efforts includes each customer's and carrier's particular needs and characteristics, as well as their key decision-makers and contact information. Without knowing who to call at which companies (and how to reach them), it would take a competitor years or decades to re-create this information. *Id.* ¶¶ 13-14. Instead, Cuevas and Nesta opted to shortcut this effort, taking

advantage of knowledge they had gained while working at TLG. *Id.* The harm to TLG's goodwill is palpable and growing. Rodriguez Decl. ¶ 16. Such a showing is more than sufficient to demonstrate irreparable harm. *Merrill Lynch*, 2000 U.S. Dist . LEXIS 22958 at *20-21.

Moreover, the difficulty inherent in measuring damages incurred due to lost business also constitutes irreparable harm for purposes of granting equitable relief. Rodriguez Decl. ¶ 17; *Luu*, 150 Cal.App.4th at 418; U-*Haul International Inc. v. Jartran Inc.*, 522 F.Supp. 1238, 1255 (D. Ariz. 1981), *aff'd* 681 F.2d 1159 (9th Cir. 1982).

### C. The Balance of Equities and Public Interest Tip Decidedly in TLG's Favor

TLG is a small, family-owned business whose very existence is threatened by defendants' actions. Rodriguez Decl. ¶ 17. Issuance of injunctive relief would leave defendants free to pursue their business as long as they do not use TLG trade secrets or otherwise attempt to benefit from their tortious conduct. The harm suffered by TLG in the absence of equitable relief would thus dwarf that of defendants if relief were granted. *Merrill Lynch,* 2000 U.S. Dist. LEXIS 22958 at *23; *Cutera,* 444 F.Supp.3d at 1209-1210. A preliminary injunction would, moreover, promote the public interest in ensuring that trade secret information built up over time through investment and hard work is protected. *Id*.

### CONCLUSION

Neither federal nor California law permits departing employees to take a large portion of their former employer's business with them on the way out the door, utilizing the former employer's trade secrets. Imposition of a minimal bond would accordingly be appropriate. *See Cutera,* 444 F.Supp.3d at 1211 (setting $5,000 bond amount).

For all of the above reasons, TLG respectfully requests that a preliminary injunction be granted in the form submitted herewith. Plaintiff does not believe that oral testimony will be necessary with

respect to this motion, and anticipates that a maximum of 20 minutes will be needed at the May 21, 2024 hearing.

Dated: April 16, 2024    CHAUVEL & GLATT, LLP

By: *Ken Weinfield* _____
Kenneth M. Weinfield
Attorneys for Plaintiff The Logistics Guys Inc.