PAUL L. CASS, ESQUIRE     SBN 158323
**LAW OFFICE OF PAUL L. CASS**
7777 GREENBACK LN. STE. 107
CITRUS HEIGHTS, CA 95610
PHONE: (916) 536. 1099
FAX: (916) 536. 0739
**EMAIL:** *casslaws@aol.com*

Attorney for Defendants Dominick Cuevas, Adam Nesta, Impala Freight, and TRIBAL

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LOGISTICS GUYS INC, an Idaho corporation.<br><br>Plaintiff,<br><br>vs.<br><br>DOMINICK CUEVAS, an individual, and TRIBAL LOGISTICS INC, a Texas Corporation, INPALA FREIGHT INC, a Califoirnia corporation, ADAM NESTA, an individual,<br><br>Defendants.<br><br>AND RELATED COUNTER-CLAIMS | Case No.: **2:23-CV-01592-DAD-CSK**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF ALL DEFENDNATS IN OPPOSITION TO TLG'S MOTION FOR PRELIMINARY INJUNCTION AND EXPLANATION OF TARDY FILING**<br><br>DATE: May 21, 2024<br>TIME: 1:30 p.m.<br>COURTROOM: 4, 15th Floor<br>JUDGE: Hon. Dale A. Drozd |

# MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION OF MOTION FILED FOR PRELIMINARY INJUNCTION

## I.   OVERVIEW

This case involves an Idaho based service company "The Logistics Guys Inc dba TLG" which has few customers (literally only a handful) who have as the main customer that makes up over 95% of the income for TLG having the name "Transmedik Specialized", which entity "TRANSMEDIK" is a licensed Broker regulated under the FMCSA ("FEDERAL MOTOR CARRIER SAFETY ADMINISTRATION"). As seen from the declarations of Adam Nesta and Dominick Curvas **over 95%** of the shippers and carriers that Elijah Rodriguez wants to preclude them, and Impala Freight Inc from doing business with were *never at any time a customer* of "The Logistics Guys Inc dba TLG". [**See** declarations of Adam Nesta and Dominick Cuevas and declaration of Paul Cass regards the seventeen (17) of the 21 Shippers (former customers of Transemedik) who switched their business from *Transmedik Specialized Inc* to *Impala Freight* which are all attached to Mr. Paul Cass' declaration and labeled as ATTACHMENTS #1 through #15, and which are incorporated herein as though fully set forth below].

Both Mr. Nesta and Mr. Cuevas collectively serviced only about 40 of *Transmedik's Shipping customers*. Fully 21 of those 40 Transmedik customers decided to move their business over to Impala Freight. Yet, as detailed in the 17 declarations of the Transmedik customers that are now Impala Freight customers, there was no solicitation that occurred by Impala, or Adam Nest, or Dominick Cuevas or anyone else. There was no recruitment of TLG's current or former employees. Moreover, there was no deletion of evidence or spoilation of evidence and no removing or using anything that could be deemed a trade secret or confidential. [Id]. In fact, none of the carriers that Transmedik used were carriers that did business with TLG. [Id].

A Judge might ask the **$64,000 Question**? Why would almost 50% of the Transmedik's customers move? A quick read of the detailed affidavits of 17 Transmedik customers out of the 21 former Transmedik customers, would answer that question. [**See** Paul Cass Esquire's declaration and his attachments #1 through #15. Two of the affidavit concern four Transmedik customers so that is why the number is 15 affidavits for 17 customers]. A reading of those 15

affidavit for the 17 former customers of Transmedik will give the Judge the answers to the $64,000 Question. [Id.]. Further, a reading of Mr. Nesta and Mr. Cuevas' detailed declarations will show in detail why the preliminary injunction motion should not be granted.

Most all 17 declarants with the exception of a couple (DUBLIN GMC and GILROY GMC) attest under penalty of perjury that they never were customers of "The Logistics Guys Inc dba TLG". [Id.]. Literally all of the Shipper and carries have no contracts with TLG and have an open field of brokers all over the USA to use for their transportation services. [Id]. No broker has a lock onto any Shipper and many Shippers use multiple brokers and are free to pick and choose whatever broker they desire. [Id]. Reyes Garcia father of Jacob Garcia (former employee of TLG who TLF fired in August 2023) who is now working as an independent contractor with Impala Freight and also at one point Mr. Reyes Garcia was related to Dominick Cuevas through marriage to his daughter Sisly Garcia.  Reyes' two companies (which can hire any broker) do business with Impala Freight now. What TLG wants the Court to do is through an injunction force the defendants to go out of business before any trial on the case. Mr. Nesta and Mr. Cuevas as former employees of TLG are protected under B & P Code 16600. [**See also *AMN Healthcare, Inc v. Aya Healthcare Services, Inc*** (2018) 28 Cal.App.5th 923; Edwards v. Arthur Anderson LLP (2008) 44 Cal4th 937].

The evidence is that at time did Adam Nesta or Mr. Dominick Cuevas  or "Impala Freight" ever solicit any of Transmedik's customers or the handful of customers of TLG. [See declarations of Adam Nesta and Dominick Cuevas and declaration of Paul Cass regards the seventeen (17) of the 21 Shippers (former customers of Transemedik) who switched their business from Transmedik Specialized Inc to Impala Freight which are all attached to Mr. Paul Cass' declaration and labeled as ATTACHMENTS #1 through #15, and which are incorporated herein as though fully set forth below]. At no time did Impala Freight, Adam Nesta or anyone else from TLG including Dominick Cuevas and Dominick's Texas entity recruit or poach customers or steal or do anything to warrant imposition of a restraining order.  At no time did any of the defendants ever use any trade secret or confidential information to poach or steal away a customer of Transmedik or any of the few customers of TLG. [Id.]. TLG's claims are vague and designed to be vague to persuade a Judge that trade secrets existed, when in truth trade secrets never existed. All TLG does is put forth conspiracy theories unsupported by facts and founded upon speculation and conjecture.

## II.    ARGUMENT

Neither Transmedik nor TLG have exclusive contracts with any Shipper or carrier. Shippers and Carriers are free to contract with any Broker at any time. The Court needs to read the **15 declarations** attached to Mr. Cass' declaration dated 5-2-2024 covering 17 of Transmedik former customers (now customers of "Impala") which will show clearly that TLG makes false and misleading claims to this Court about its business:

[Former customer of Transmedik **#1 & #2**]. Pat Johnson: ARBITECH LLC and VELASEA LLC;

[Former customer of Transmedik **#3**]. Leo Marangi of PRIMO FITNESS SOLUTIONS, LLC;

[Former customer of Transmedik **#4**]. Yossi Shimony of PRONTO INSTALLATION INC;

[Former customer of Transmedik **#5**]. Shelby Kelly of PROCURRI LLC;

[Former customer of Transmedik **#6 & #7**]. Reyes Garcia of DUBLIN GMC & GILROY GMC;

[Former customer of Transmedik **#8**]. Waylan Cobb of PLUS MORE FITNESS, LLC;

[Former customer of Transmedik **#9**]. Robert Garcia of CLASSIC HOME;

[Former customer of Transmedik **#10**]. Dan Lapp of FIVE STAR TRANSPORT;

[Former customer of Transmedik **#11**]. Ricardo Naranjo of CRYSTAL LIGHTING CORP;

[Former customer of Transmedik **#12**]. Donna McCallum Ins for IRON GRIP BARBELL;

[Former customer of Transmedik **#13**]. Melissa Felix of HAIFA NORTH AMERICA;

[Former customer of Transmedik **#14**]. David Silva of CALIFORNIA HOME FITNESS CORP.;

[Former customer of Transmedik **#15**]. Kristopher Carabajal of ADVANCED Nutrients LLC;

[Former customer of Transmedik **#16**]. Vicente Alvarez of HOIST FITNESS;

[Former customer of Transmedik **#17**]. Vince Leonard of NORTHEAST Fitness Solutions INC;

These list below are former customers of Transmedik, and for one of them a current customer of Transmedik that now do business with Impala Freight. These four customers declined to provide a declaration, but which would testify truthfully if called as a witness at a deposition or in a trial.

[Former customer of Transmedik **#18**]. Scott Delay of BIGGE CRANE;

[Former customer of Transmedik **#19**]. Nina Bellomo of FITNESS EXPERTS, LLC;
[Current customer of Transmedik and customer of "Impala" **#20**]. JOHNSON HEALTH TECH
[Former customer of Transmedik **#21**]. Douglas Roth of LIFE FITNESS.

In truth, TLG lost no customers. TLG had only about 4 to 5 customers in total. TLG's main and biggest customer was Transmedik which entity consisted of about **95%** of all of the business income coming into TLG which business consisted of TLG being a service provider for the broker named Transmedik, hired by Transmedik to assist Transmedik's customers. These Shippers were not customers of TLG. [Id.]. TLG would advertise or promote Transmedik's brokerage and MC number to carriers and shippers instead of its own MC number for TLG. While violating 49 CFR Section 371.7 MISREPRESENTATION, Transmedik (acting as the Broker for numerous Shippers) decided to farm out its labor to TLG to service Transmedik's customers. Transmedik funneled over to TLG approximately 60 + of its customers for TLG to service for Transmedik using Transmedik's name, Transmedik's Tax ID number, Transmedik's Email addresses, Transmedik's DOT number, and Transmedik's MC number. [Id.]. Out of those 60 Transmedik customers the defendants only dealt with 40 of them. [Id.].

*What TLG lost as income was a drop in income from less work serving Transmedik's customers.* TLG has **no standing** to sue Mr. Nesta and Mr. Cuevas or "Impala" **or** the Texas entity regards customers and loss of income from Transmedik's customers. A lot of this was self-inflicted by choices of TLG's CEO and 100% owner named Elijah Rodriguez. TLG retained Transmedik as its client. What was lost was that Transmedik (the real injured party) had fewer customers to farm out to TLG to have TLG service those customers for Transmedik. **TLG lost no customers**. Significantly, none of the defendants (including the Texas entity) stole away Transmedik as a customer of TLG and we do no business with Transmedik. This is mainly because Transmedik (MC#387734) and Impala Freight (MC#772486) are both registered brokers like TLG (MC#889767). All Brokers are regulated with the Federal Motor Carrier Safety Administration [FMCSA]. Pretending to be another broker would be violating **49 CFR Section 371.7 MISREPRESENTATION**.

**Why did Transmedik's customers leave Transmedik?** Some of Transmedik's Shipping customers decided not to continue business with Transmedik due to poor service of Transmedik's staff or poor service of Transmedik's service company's staff or outsourced TLG's

Page 4

employees after I was fired and also after Adam resigned. [Id.]. The declarations attached to Mr. Cass' affidavit clearly prove this out. The true reason is suburb customer service by skilled people such as Adam Nesta and Dominick Cuevas who are experts in their profession – transportation logistics. [Id.].

**EVERY CONTRACT WAS ONLY WITH TRANSMEDIK**: The ex-employe defendants were not to allowed to let Transmedik's customers and the carriers of Transmedik to be aware about TLG. [Id.]. The carriers for Transmedik's loads all signed agreements SOLELY with Transmedik, but not with TLG. These Shippers all never signed any actual exclusively contracts but did send in the Transmedik Specialized "New Customer" packets so that Transmedik Specialized's accountant and owner Alen Matadyan's brother-in-law David Matevosyan could run the credit for the new Transmedik client and enter them into the system offering them payment terms with Transmedik Specialized. TLG employees would send out the clients the **W-9** and banking information for Transmedik Specialized. Never TLG documents as no agreements were ever entered into with Transmedik's customer (Shippers) or Transmedik's carriers. Fully 100% of these carriers TLG is claiming signed carrier agreements, signed the carrier agreements only with Transmedik to transport goods for Transmedik's customers (Shippers) which carriers were paid only by Transmedik. [Id.].

The various Shippers using a written contract with Transmedik pay their broker named "Transmedik" for the transportation services (including carrier transportation). There are no contracts with TLG. The carriers enter into contracts with the Broker (Transmedik), but also the carriers are under the Federal law, **"The Carmack Act"**. "The Carmack Act" makes the Shipper that is named on the *Bill of Lading* contractually obligated to pay the carrier's charges *if the broker does not pay*. TLG is neither a party to the Bills of Lading nor a party to the carrier's agreement with the Broker named Transmedik. [Id.]. The licensed broker Transmedik pays out to its carriers the contractual sums agreed with Transmedik to pay those carriers for the carrier's transportation services provided to Transmedik's customers – the Shippers. There were other extra fees paid by Transmedik regards a few other customers of Transmedik. EXAMPLE: Transmedik takes out **kickbacks** from the gross receipts for a few Shippers assigned under "AVIN'S TEAM". One Kickback scheme in particular was paid out on loads contracted with Transmedik for customers **CORE Health & Fitness Inc aka "CORE", PRECOR FITNESS, ALPHA FITNESS GYM**, and also a few installers like **MASS MOVEMENT** now purchased

by publicly traded entity **JB HUNT TRANSPORT SERVICES INC** and **SUPERIOR FITNESS**. These "kickbacks" are to be paid over to a single employee of the Shipper. [Id.].

All 17 Transmedik customer affidavits clearly show that TLG's claims are false. Literally there are no trade secrets or confidential data belonging to TLG or even to Transmedik. Carrier data (such as names, costs, etc) comes from the 5 major *load boards* and other lesser known "load boards" attended by thousands of carriers. There is no secret regards the carriers or anything else dealing with TLG or Transmedik. The "Load Boards" are all public and available to anyone in the World for a fee each month. Moreover, because Elijah liked to share information to just about anyone, there were no efforts to maintain secrecy amongst the employees of TLG - even with Elijah's *shenanigans* dealing with him and Transmedik's participations in various State and Federal crimes. [Id.; see also CAL Penal Code 641.3 "Commercial Bribery Law in California"; Penal Code 186.10 "Money Laundering") and Federal Law 49 CFR Sections 371.7, 371.9(b), 371.10, and 371.121, as well as 18 USC 1951 ("interference with commerce"); 18 USC 1952 (using interstate commerce to promote unlawful activities); and / or 18 USC 1341 (mail fraud)].

None of the customer information that Mr. Cuevas, Mr. Nesta, Impala or the Texas entuty obtained while at TLG had any connection to being secret. Also, as noted in these 17 customer statements attached to Mr. Cass' declaration their declarations are proof from the Shippers themselves that confirm Dominick Cuevas' and Adam Nesta's personal and friendly customer service talents and skills in the general transportation logistics business and knowledge of *public load boards* is what gives them the edge that makes these Shippers want to hire them to work for them as opposed to other Brokers. [**See** declarations of the Shippers and declarations of Mr. Cuevas and Mr. Nesta]. These Shippers can move their business to any Broker or group of Brokers. There is no exclusivity. No other proprietary information or secret recipe can reproduce the hard work and professionalism of Mr. Cuevas and Mr. Nesta as they have both learned the needed skills of their profession. Most of the people that Mr. Cuevas and Mr. Nesta dealt with who worked for or were owners of the various Shippers had Mr. Cuevas' and Mr. Nesta's **personal cell phone number** (as that was required of them by Elijah Rodriguez when they were working for "The Logistics Guys Inc dba TLG").[Id].

**THE SYSTEM CALLED DR. DISPATCH**: The *Transportation Management System "TMS" was a computer system* called Dr. Dispatch that the company Transmedik uses. Dr.

Dispatch is also used by TLG's employees to service Transmedik's customers. This system has the user "print" rate confirmations and BOL's (Bills of Lading) as a PDF file before sending it as an attachment. Elijah (as the 100% owner of TLG and TLG's CEO) and his entity "TLG" have 100% access to this system "Dr Dispatch of Transmedik". [Id.]. "Dr. Dispatch" is what is used to do business with customers of Transmedik. TLG does not issue Bills of Lading as the broker is not TLG but Transmedik and the hire of a carrier comes from the entity Transmedik and not TLG. Moreover, the carrier invoices are paid by the broker that hired the carrier - Transmedik. Hence, when a "BOL" is mentioned, it is referring to Transmedik and not TLG. These PDF files are not for TLG but for a non-party "Transmedik" regards Transmedik's agreements with Shippers for loads to be shipped by Transmedik and invoiced to those Shippers by Transmedik. [Id.]. Those invoices are then paid with money back to Transmedik using Transmedik's DOT and MC numbers and Transmedik's TAX ID number which invoices are paid by the customer of Transmedik (Shippers) before Transmedik later "kicks backs" money to either someone like "Gus Prado" or TLG. Those PDF files just described in the prior sentences create clutter and use up needed space at times that can cause the computer to run slower or just make it harder to find items that are actually needed. Once they are attached on the email chain that they were needed for, they then are no longer needed and waste space on the computer or waste space on the ONEDRIVE. Deleting them or moving them to different files does not make them disappear forever. It just cleans up the area they were in. [Id.].

**TRADE SECRETS DID NOT EXIST**: Elijah Rodriguez claims that generally there existed some vague trade secrets. There were no trade secrets. Defendants attest that they did not steal anything from TLG. Almost everything stated by Elijah Rodriguez in his April 15, 2024 declaration are false and lack support and have no foundation, and are nothing more than inadmissible hearsay and speculation in an attempt to villainize and discredit ex-employees of TLG. Very few of these Shippers that left Transmedik and moved their business to "Impala Freight" have ever heard of TLG. How could TLG have any **"goodwill"** harmed when these Shippers (former customers of Transmedik) did not even know that TLG existed until told so by Paul L. Cass my lawyer in late March 2024? Defendants compete fairly with the broker named Transmedik but do so legally and without tricks or use of anyone's trade secrets belonging to either Transmedik or its service provider named TLG.

Both Mr. Cuevas and Mr. Nesta sent an announcement to some of the former Transmedik customers. Yet, the announcement was short and benign. Dominick's stated: **Hello this is Dominick, and I just wanted to announce that I am now at Impala Freight as a Logistics Coordinator. Thank you and best regards!.** [Id.]. Adam Nesta's was almost a mirror image announcement. [Id.]. Defendants (Mr. Cuevas and Mr. Nesta) do not identify themselves to the public as anything other than agents for the licensed broker named "Impala Freight". [Id.]. They do not funnel or transport any confidential information belonging to TLG or Transmedik or so-called trade secrets of either TLG or Transmedik or any proprietary data of either TLG or Transmedik to "Impala Freight" or anyone. [Id.]. They service only those customers of "Impala Freight" (**that number at this declaration 21 customers**) which used to be customers of Transmedik. They have not solicited any employees of TLG to leave TLG. [Id.].

Adam Nesta's May 1, 2024 declaration has a detailed explanation as to each and every assertion by the claimed forensic computer expert. [See Adam Nesta declaration filed 5-2-2024]. All of what was alleged is explained in detail by Mr. Nesta. [Id]

## PAUL CASS' TARDY FILING ON 5/2/2024

The declaration of Mr. Cass (who has been involved in scant Federal cases) shows that his misunderstanding as to Rule 230 "c" was excusable. [**See** CASS declaration dated 5-2-2024]. His last case in the Federal Court was in 2021 and in that case the revised Rule 230 subsection "c" had not yet been made. After fortuitously finding out the Rule 230 was that the opposition papers need to be filed 14 days after the filing of the April 16, 2024 motion as opposed to 14 days before the May 21, 2024 hearing, Mr. Cass worked late into the evening and immediately requested a STIPULKATION from opposing counsel as well as called the Judge's clerk for advice. Truly this error is reading the old rule which was now flipped on 2-28-2022 is excusable neglect. Defendants have a valid and credible defense to the motion. Granting the motion would be tantamount to winning the trial before the trial commenced. The admissible evidence shows that the declaration of TLG's owner "Elijah Rodriguez" was replete with misrepresentations and falsehoods. Mr. Cass calendared the opposition papers to be filed May 7, 2024 within the old

Rule 230(c). Justice and fair play calls for leniency by the Court so as to allow the Opposition papers to be considered.

### III.   CONCLUSION

Without giving any details TLG's motion is supported by speculation & conjecture. TLG in reality has no standing to even claim damages as TLG has only a handful of clients with Transmedik being the one client that provided to TLK over 95% of its business. Yet, TLG is just a service provider for the registered broker named Transmedik. If any entity had a claim, it would be Transmedik not TLG. The claimed customers that were lost (of which the majority provided declarations attached to Mr. Cass' declaration as **Attachments #1 through #15**), were lost if at all by Transmedik not TLG. TLG entered into no contracts with any of these customers of Transmedik. Transmedikwas the entity that entered into the agreements, invoiced the Shippers, and Transmedik and only Transmedik paid the costs including paying the carriers and even paying the commercial bribes, as well as Transmedik used its influence (not TLG's) and goodwill )not TLG's) and its insurances and its Tax ID number, its DOT number, its MC number, its email addresses, and everything else having anything to do with these customers of Transmedik. **TLG lost not one client to the defendants.**

DATED: **MAY 2, 2024**       BY: _/s/ Paul L. Cass_

                                              PAUL L. CASS, ESQUIRE SBN 158323

## PROOF OF SERVICE

COURT: UNITED STATES DISTRICT COURT EASTERN DISTRICT OF CALIFORNIA

COURTHOUSE: Robert Matsui Courthouse 501 I Street, 15Th Floor Courtroom 4, Sacramento CA 95814

JUDGE: Hon. DALE A. DROZD

CASE NUMBER: 2:23-CV-01592-DAD-KJN

CASE NAME: THE LOGISTICS GUYS INC., an Idaho Corporation Vs. DOMINICK CUEVAS, an individual, and TRIBAL LOGISTICS INC., A Texas Corporation.

I am employed in the County of SACRAMENTO, State of California. I am over the age of 18 and not a party to the within action; I am employed at LAW OFFICE OF PAUL L. CASS, 7777 Greenback Lane Ste #107, Citrus Heights CA 95610.

I am familiar with the regular mail collection and processing practice of said business, and in the ordinary course of business the mail is deposited with the United States Postal Service that same day. On this date **MAY 2, 2024** I served the foregoing document described as:

**PERSON SERVED:** KENNETH M. WEINFIELD, ESQUIRE.

**ADDRESS WHERE SERVED:** CHAUVEL & GLATT, LLP
66 Bovet Road, Suite 280
San Mateo, CA 94402

**DOCUMENT SERVED: MEMORANDUM OF POINTS AND AUTHORITIES OF ALL DEFENDANTS IN OPPOSITION TO TLG'S MOTION FOR PRELIMINARY INJUNCTION AND EXPLANATION OF TARDY FILING.**

ON ALL PARTIES IN SAID ACTION AS ADDRESSED BELOW BY CAUSING A TRUE COPY THEREOF TO BE:

[ ] Telecopied via facsimile :
[ ] Placed in a sealed envelope with postage thereon fully prepaid in the designated area for outgoing mail, addressed as set forth below.
[ ] Delivered by hand.
[ ] Sent via overnight delivery. (UPS or USPS Overnight)
[X] E-mail: ken@chauvellaw.com

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **MAY 2, 2024** at Citrus Heights, California.

*Anna Kruk*

ANNA B. KRUK LEGAL SECRETARY